1
2
3
4
5          IN THE UNITED STATES DISTRICT COURT
6       FOR THE NORTHERN DISTRICT OF CALIFORNIA
7
8   NESTOR C. DOMINGO,                    No. C -11-05333CRB (EDL)

9          Plaintiff,                     **ORDER GRANTING IN PART AND
                                          DENYING IN PART PLAINTIFF'S
10  v.                                    MOTION TO COMPEL**

11  PATRICK R. DONAHOE, POSTMASTER
    GENERAL, U.S. POSTAL SERVICE,
12
          Defendant.
13  _____/

14      Pending before the Court are: (1) Plaintiff's Motion for Order Compelling Discovery and

15  Entry of Default; (2) Plaintiff's Motion to Shorten Time to Hear Plaintiff's Motion to Strike; and (3)

16  Plaintiff's Motion to Strike Defendant's Opposition. For the reasons set forth below, the Court

17  grants in part and denies in part Plaintiff's motion to compel. The Court also grants Plaintiff's

18  motion to shorten time but denies his motion to strike Defendant's opposition.

19  **I.    Background**

20      Plaintiff Domingo sued his former employer, the United States Postal Service ("USPS"), for

21  discrimination. The District Court limited this case to the discrete charges Plaintiff raised in EEO

22  Case No. 4-F-945-0103-06, which related to a string of events that allegedly occurred from March 9,

23  2006 through March 31, 2006. (Dkt 31.) Plaintiff alleges that Defendant discriminated against him

24  on the basis of his race, nationality, and physical handicap. (Id.) Plaintiff also alleges that

25  Defendant retaliated against him. (Id.) The allegedly discriminatory conduct involved: (1) route

26  inspections by a co-worker, Pete Breeland; (2) Breeland's allegedly unauthorized examination of

27  Plaintiff's work log; (3) a supervisor awarding routes to Plaintiff's co-worker to discourage the co-

28  worker from supporting Plaintiff's EEO complaints; (4) efforts to make it seem that Plaintiff was

    falling behind in his duties; (5) Plaintiff's co-workers inspecting Plaintiff's personal vehicle; (6) the

United States District Court
For the Northern District of California

1  use of Plaintiff's "personal and very private information" from emails; and (7) rumors about

2  Plaintiff's residency status. (Id.)

3         The present motion arises from Plaintiff's Second Set of Requests for Admission, Plaintiff's

4  Second Set of Requests for Production, and Defendant's Privilege Log. The parties met and

5  conferred on May 15, 2013 and June 10, 2013 regarding many, but not all, of the issues raised by

6  Plaintiff in his motion to compel. Fact discovery closed on June 14, 2013, and the District Court

7  denied Plaintiff's motion to extend fact discovery. (Dkt. 121.) On June 21, 2013, Plaintiff filed the

8  pending motion to compel. Defendant's opposition was due on July 5, 2013, but Defendant did not

9  serve Plaintiff with the opposition brief until July 6, 2013. Plaintiff replied on July 15, 2013, and

10 simultaneously filed a motion to strike Defendant's opposition and a motion to shorten time.

11 **II.    Discussion**

12        A.     Motion to Strike and Motion to Shorten Time

13        Plaintiff requests that the Court strike Defendant's opposition to Plaintiff's motion to compel

14 because Defendant served Plaintiff with the opposition brief one day late. Plaintiff argues that

15 Defendant should have sought an extension under Fed. R. Civ. P. 6(b) before the July 5, 2013

16 deadline, and, because Defendant's counsel has not provided a compelling reason for an extension,

17 the Court should sanction Defendant by striking its opposition brief. (Pl.'s Mot. Strike at 3, Dkt.

18 122.) Plaintiff also moves to shorten time so that the Court can hear his motion to strike before the

19 Court rules on his motion to compel.

20        The Court grants Plaintiff's motion to shorten time but denies Plaintiff's motion to strike.

21 Plaintiff has not shown that he was prejudiced by Defendant's late service. See Cai v. Fishi Café,

22 Inc., Case No. 05-3175 EDL, 2007 WL 2781242, at *1 n.2 (N.D. Cal. Sept. 20, 2007) (declining to

23 dismiss late-filed opposition where no prejudice shown). Even if Defendant had served Plaintiff by

24 U.S. Mail on July 5, the earliest date that Plaintiff could have received the opposition was July 6,

25 2013, the same date on which Defendant personally served Plaintiff. Additionally, any prejudice

26 caused by the late service could have been rectified if Plaintiff had agreed to Defendant's offer to

27 stipulate to a one-day extension for Plaintiff's reply brief. Plaintiff instead ignored Defendant's offer

28 and filed a motion to strike instead.

B.    Requests for Admissions

1.    *General Request to Compel Responses*

Plaintiff moves the Court to compel responses to Requests for Admission ("RFAs") 4-35, 37, 39-43, 45-50, 52-53, 56-67, 59-71, 80, and 82-106. Plaintiff argues that Defendant's "boilerplate objections" are insufficient and that Defendant has evaded answering the RFAs. Defendant counters that Plaintiff has failed to demonstrate how Defendant's responses to the RFAs are deficient and that Plaintiff seeks to compel responses to RFAs that Defendant has already admitted.

Plaintiff correctly points out that many of Defendant's objections are improper boilerplate, or misdirected objections of "vague and ambiguous" as to understandable terms. Nonetheless, the Court denies Plaintiff's blanket motion to compel all of the RFAs on which he moves. As the moving party, Plaintiff is required to inform the Court "why he believes the defendants' responses are deficient, why the defendants' objections are not justified, and why the information he seeks through discovery is relevant to the prosecution of his action." Boston v. Garcia, Case No. 10-1782, 2013 WL 1165062, at *1 (E.D. Cal. Mar. 20, 2013). Plaintiff has not met this burden.

2.    *RFAs 94 and 95*

Plaintiff also moves the Court to compel supplemental responses to RFA 94 and RFA 95, which seek admissions that Defendant did not take, and does not have, statements from employees of Stag's Leap Wine Cellar regarding Plaintiff's citizenship. (Wang Decl. Ex. N, Dkt. 119.) Defendant responded to these RFAs by admitting that "no Stags Leap wine Cellar employee submitted an EEO Investigative Affidavit, or other written statement, as part of EEO Case 4F-945-0103-06." Plaintiff argues that Defendant's attorney-client and work product objections are inappropriate and that Defendant did not respond to the admissions as written. Defendant asserts that the RFAs are ambiguous, the information they seeks is not relevant, and that to the extent the RFAs are not limited to the EEO investigation, they seek information protected by the work product doctrine.

However, these RFAs are fairly straightforward and are not limited to statements provided in the EEO proceedings. Defendant has not established that answering these RFAs invades work product protection. Fed. R. Civ. P. 26(b)(3). Unlike the case cited by Defendant, Thomas v. Beutler, Case No. 10-1300, 2012 WL 4845571, at *3 (E.D. Cal. Oct. 10, 2012), Plaintiff does not

3

United States District Court
For the Northern District of California

1  seek information that would disclose counsel's litigation strategies or mental impressions.  Plaintiff

2  simply seeks admissions regarding the existence (or not) of certain statements.  Whether Plaintiff

3  would be entitled to the content of any such statements is not before the Court.  The Court therefore

4  orders Defendant to admit or deny that Defendant has any written statements by Stag's Leap Wine

5  Cellar employees regarding whether Jeffrey Tillotson and Pete Breeland told Stag's Leap Wine

6  Cellar's secretary, Shannon Howlett, that Plaintiff is an undocumented alien.

7         C.      Requests for Production

8         Plaintiff moves to compel the production of documents responsive to Requests for

9  Production ("RFPs") 6, 7, 10, 11, 16, 17, 22, and 23 from Plaintiff's Second Set of Requests for

10  Production.

11             1.      *RFP 6*

12        RFP 6 seeks the complete record of Defendant's "Initial Management Inquiries" in response

13  to Plaintiff's complaints of harassment, hostile work environment, and other allegedly improper

14  conduct. (Wang Decl. Ex. L, Dkt. 115.)  Plaintiff argues that this RFP relates to EEO Case 4F-945-

15  0103-06 and is thus relevant and not overly broad.  Defendant argues that to the extent RFP 6 is so

16  limited, it already produced responsive documents.  According to Defendant, Plaintiff argued at the

17  June 10, 2013 meet and confer that RFP 6 was not limited to EEO Case 4F-945-0103-06, but instead

18  includes all complaints the USPS received from Plaintiff. (Wang Decl. ¶ 30, Ex. X.)

19        The Court denies Plaintiff's motion to compel with respect to RFP 6.  The request is

20  overbroad on its face.  The District Court determined that this case is limited to allegations raised in

21  EEO Case 4F-945-0103-06.

22             2.      *RFP 7*

23        RFP 7 seeks Form 4241s that were *submitted to* the Management Sectional Center in 2006.

24  (Wang Decl. Ex. L (emphasis added).)  Defendant produced these documents.  Plaintiff now argues

25  he is entitled to Form 4241s *from* the Management Sectional Center because the documents

26  Defendant produced might not be authentic.

27        The Court denies Plaintiff's motion to compel with respect to RFP 7.  Defendant provided

28  responsive documents.  Plaintiff cannot change his request based on speculation.

United States District Court
For the Northern District of California

### 3.   *RFP 10*

RFP 10 seeks "[f]or the time period on or about March 2006 . . . the USPS policy, personnel practice, and or contract agreement showing supervisor Jeff Tillotson had the authority to designate a craft employee to be a route inspector or temporary management." (Wang Decl. Ex. L.)  According to Plaintiff, his co-worker Pete Breeland "made a sworn statement that Jeffrey Tillotson gave him authorization as temporary management." (Pl.'s Mot at 10.)  Plaintiff believes he is entitled to documents sufficient to show whether Tillotson was authorized to take such action.  Defendant counters that it already produced all documents responsive to this request and in addition produced the affidavit of Patricia Santos-Armstrong, the Postmaster for the Napa Post Office, in which she explains how Breeland was given the authority for route inspections. (Wang Decl. Ex. D.)  Further, Defendant notes that in RFA 98 it admitted that Santos-Armstrong did not create written documentation of her authorization of Tillotson to use Breeland as a route inspector.

The Court denies Plaintiff's motion to compel with respect to RFP 10.  Defendant has produced the responsive documents it has in its possession and cannot produce documents that do not exist.

### 4.   *RFP 11*

RFP 11 seeks "Pete Breeland's March 2006 written notes and observations while following Plaintiff on his route on or about March 2006." (Wang Decl. Ex. L.)  Plaintiff asserts that these notes were not produced, and that to the extent they were destroyed, Defendant engaged in spoliation.  Plaintiff believes that Breeland should have retained his notes because: (1) past history indicated that Plaintiff was likely to file a grievance or EEO complaint; (2) emails between Plaintiff and the union indicate that Breeland was contacted about the route inspection before he destroyed his notes; and (3) Plaintiff contacted the EEO Dispute Resolution specialist as early as March 27, 2006, and the notes were destroyed no earlier than March 30, 2006. (Pl.'s Reply at 7-8.)  In response, Defendant represents that the notes at issue no longer exist because Breeland did not retain them after using them to create a Form 4241.

The Court denies Plaintiff motion to compel with respect to RFP 11.  Breeland's notes no longer exist, and therefore the Court cannot order Defendant to produce them.  Moreover,

1 Defendant's evidence of alleged spoliation is insufficient to justify an adverse inference against
2 Defendant. In order to prove spoliation, a party must show: "(1) the party with control over the
3 evidence had an obligation to preserve it at the time of destruction; (2) the evidence was destroyed
4 with a 'culpable state of mind'; and (3) the evidence was relevant to the party's claim or defense." In
5 re Hitachi Television Optical Block Cases, Case No. 8-1746 DMS (LNS), 2011 WL 3563781, at *5
6 (S.D. Cal. Aug. 12, 2011). Plaintiff has not established that Breeland had an obligation to preserve
7 his notes from the route inspection; Plaintiff merely speculates that Breeland "should have known"
8 that Plaintiff would file a complaint. Further, there is no evidence that Breeland acted with a
9 culpable state of mind.

10             5.    *RFP 16*

11         RFP 16 seeks "the documentation that the Plaintiff was timely paid for filling out the Voice
12 of the Employee Survey on or about February 2006." (Wang Decl. Ex. L.) Defendant produced a
13 "Rural Carrier YTD Adjustment Register dated December 27, 2006 that lists pay adjustments made
14 in 2006 based on submission of a PS Form 8127, Rural Carrier Supplemental Payment." (Id.)
15 Plaintiff argues that this document is a summary and thus insufficient. Instead, Plaintiff seeks the PS
16 Form 8127 upon which the summary was based. Defendant argues that the USPS no longer has PS
17 Form 8127s from 2006 because the retention time for Form 8127 is three years. Additionally,
18 Defendant argues that PS Form 8127 is not responsive to RFP 16 because the form is a request for
19 payment, not documentation that Plaintiff was paid.

20         The Court denies Plaintiff's motion to compel with respect to RFP 16. Defendant has
21 already responded with documents sufficient to show that Plaintiff was paid. Moreover, the
22 document Plaintiff seeks no longer exists. (Wang Decl. ¶ 33.) Plaintiff's belief that the USPS
23 should have retained these documents is unsupported by the evidence.

24             6.    *RFP 17*

25         RFP 17 seeks "the documentation that any other employee was timely paid for filling out the
26 Voice of the Employee Survey on or about February 2006." (Wang Decl. Ex. L.) Plaintiff makes
27 the same arguments with respect to RFP 17 that he makes with respect to RFP 16. Similarly,
28 Defendant counters that the PS Form 8127s that Plaintiff seeks no longer exist and are irrelevant.

United States District Court
For the Northern District of California

1    The Court denies Plaintiff's motion to compel with respect to RFP 17 for the same reasons it
2 denied the motion to compel with respect to RFP 16.

3        7.    *RFP 22*

4    RFP 22 seeks "a complete list of all complaints filed by the Plaintiff from 2004 to 2008,
5 including EEO pre-complaints, formal EEO complaints, mediated EEO complaints, and dismissed
6 EEO complaint." (Wang Decl. Ex. L.) Plaintiff asserts that Defendant produced an incomplete and
7 selective list. Defendant contends that it provided an appropriate printout from its database of EEO
8 complaints.

9    The Court denies Plaintiff's motion to compel with respect to RFP 22. Plaintiff has not
10 indicated what it believes is missing from Defendant's printout, and the printout includes complaints
11 initiated in 2004, 2005, 2006, 2007, and 2008.

12       8.    *RFP 23*

13    RFP 23 seeks Defendant's records regarding Defendant's investigation of Plaintiff's January
14 4, 2005 automobile accident referenced in Patricia Santos-Armstrong's Investigative Affidavit.
15 (Wang Decl. Ex. L.) Defendant did not respond to this request and argues that the automobile
16 accident is not relevant to the claims and defenses in this lawsuit. Defendant asserts that the mere
17 fact that Santos-Armstrong mentioned the accident in two paragraphs of her 2008 affidavit does not
18 make the accident an issue in this lawsuit, which is limited to discrete charges brought in EEO Case
19 No. 4F-945-103-06. Plaintiff argues that the accident is relevant because he experienced more
20 harassment after being blamed for the accident. Further, Plaintiff notes that his work-related medical
21 record was part of the EEO Investigative Report, he was asked about the accident in a Rule 35
22 medical examination and at his deposition, and Defendant produced 31 pages of exhibits about the
23 accident during the EEO investigation of this case. (Pl.'s Mot at 19-20; Pl.'s Reply at 9-10.)

24    Although RFP 23 is overbroad as written, and the issue is a close one, the Court grants in part
25 Plaintiff's motion to compel with respect to RFP 23. While the 2005 automobile accident itself is
26 not at issue, Defendant's investigation into the accident could potentially lead to relevant evidence as
27 background to Plaintiff's claims. Consequently, the Court orders Defendant to produce documents
28 sufficient to show the conduct and results of its investigation into the January 4, 2005 automobile

United States District Court
For the Northern District of California

1    accident.

2         D.    Privilege Log Entries

3         Plaintiff objects to a number of entries on Defendant's privilege log and argues that

4    Defendant has improperly withheld documents on the basis of attorney-client privilege and work

5    product immunity.  Although the parties did not meet and confer on a number of these issues, the

6    Court will address those that the parties have fully briefed.

7              1.    *Communications between Postal Service Attorney Marsh and Postal Service
                    Catalog Program Contractors*
8
9         Plaintiff argues that emails and written communications between Jason Marsh, Senior

10   Litigation Counsel for the USPS's Pacific Law Area Office, and Malcolm Randolph and Shalanda

11   Brown, USPS Information Catalog Program ("ICP") contractors, are not protected because the

     communications do not reveal an attorney's mental impressions, conclusions, strategies, or theories.
12
     Defendant counters that Randolph and Brown are the functional equivalents of Postal Service
13
     employees and that the attorney-client privilege therefore extends to otherwise protectable
14
     communications between Marsh, Randolph, and Brown.  Defendant points out that the
15
     communications at issue concern the preservation and retrieval of emails and that the duties of
16
     Randolph and Brown include assisting the USPS Law Department in meeting its e-discovery
17
     obligations.  (Marsh Decl. ¶¶ 4-6.)
18
          The Court denies Plaintiff's motion to compel with respect to communications between
19
     Marsh, Randolph and Brown listed on Defendant's privilege log.  Randolph and Brown supported
20
     the Law Department in meeting its e-discovery obligation and searched for responsive documents.
21
     Moreover, the ICP is a partnership between the USPS's Chief Technology Officer's organization and
22
     the USPS's General Counsel's office.  (Marsh Decl. ¶¶ 4-6.)  Accordingly, Randolph and Brown
23
     acted as "functional equivalents" of employees, so their communications with Defendant's counsel
24
     are protected by the attorney-client privilege.  U.S. v. Graf, 610, F.3d 1148, 1158 (9th Cir.
25
     2010)(citing Upjohn Co. v. United States, 499 U.S. 383, 390-94 (1981)).  Further, "the attorney-
26
     client privilege may extend to communications with third parties who have been engaged to assist
27
     the attorney in providing legal advice."  United States v. Richey, 632 F.3d 559, 566 (9th Cir.  2011).
28
     Here, Randolph and Brown were engaged to assist Marsh in providing legal advice to Defendant

                                              8

United States District Court
For the Northern District of California

1    about its discovery obligations, and the privilege log indicates that the emails and communications at

2    issue involve the preparation of litigation materials. (Wang Decl. Ex. R, Dkt. 119.)  Any emails

3    between Marsh, Randolph, and Brown regarding the preparation of litigation materials and the

4    search for responsive documents and electronically stored information are materials created in

5    anticipation of litigation and are thus protected work product.

6              2.       *Communications between USPS Attorneys and Breeland after Retirement*

7              Plaintiff seeks production of September 12, 2012 email communications involving Breeland

8    and Attorneys Jennifer Wang and Jason Marsh that Defendant withheld on the basis of attorney-

9    client privilege and the work product doctrine. (Wang Decl. Ex. R at 2.)  Defendant lists the subject

10   of these communications as "regarding litigation and preparation of litigation materials." (Id.)  The

11   subject lines of the emails at issue are: (1) "Re: Domingo: requests for production of documents"; (2)

12   "FW: Domingo EEO - Substitution in Declaration"; (3) "FW: Nestor Domingo 2006 EEOC Case";

13   and (4) "FW: Nestor Domingo EEO - Declaration." (Id.)  Plaintiff also seeks production of a June

14   22, 2012 email from Anna di Mambro, a USPS Law Department paralegal, to Breeland with the

15   subject heading "RE: Nestor C.  Domingo v. United States of America, No.  C 11-05333 CRB." (Id.

16   at 3.)[1]

17             Plaintiff argues that these communications are not privileged because as of September 12,

18   2012, Breeland was no longer a USPS employee and was not a client of Defendant's counsel.

19   According to Plaintiff, at the time of these communications, Breeland was no different from any

20   other fact witness.  In support, Plaintiff cites Infosystems, Inc. v. Ceridian Corp., 197 F.R.D. 303,

21   306 (E.D. Mich. 2000) for the proposition that "counsel's communications with a former employee

22   of the client corporation should be treated no differently from communications with any other third-

23   party fact witness," with the exceptions that "privileged communications which occur during the

24   period of employment do not lose their protection when the employee leaves the client corporation"

25   and "there may be situations where the former employee retains a present connection or agency

26   ─────────────

27   [1] The Court rejects Plaintiff's argument that this communication is not privileged because Ms.
     di Mambro is not an attorney.  She is a paralegal for the USPS Law Department, and not only does the
     attorney-client privilege extends to third parties who assist an attorney, but work product protects
28   documents prepared by a party or its agent regardless of whether that agent is an attorney. Richey, 632
     F.3d at 566; Fed. R. Civ. P. 26(b)(3)(A).

United States District Court
For the Northern District of California

1   relationship with the client corporation, or where the present-day communication concerns a

2   confidential matter that was uniquely within the knowledge of the former employee when he worked

3   for the client corporation, such that counsel's communications with his former employee must be

4   cloaked with the privilege in order for meaningful fact-gathering to occur."[2]

5        Defendant acknowledges that Breeland retired from the USPS on April 30, 2012.  However,

6   Defendant states that the emails at issue relate to counsel's investigation of facts regarding

7   Breeland's conduct while employed at the USPS, and preparation of Defendant's responses to

8   discovery.  Specifically, the September 2012 emails include questions from counsel regarding

9   Plaintiff's allegations and Breeland's responses, and the June 2012 letter includes a list of questions

10  for Breeland.  Defendant argues that these communications between USPS attorneys and Breeland

11  are protected by the attorney-client privilege under In re Coordinated Pretrial Proceedings in

12  Petroleum Prods. Antitrust Litig., 658 F.2d 1355, 1361 (9th Cir. 1981) and Admiral Ins. Co. v. U.S.

13  Dist. Court for Dist. of Ariz., 881 F.2d 1486, 1492 (9th Cir. 1989), because Plaintiff's allegations

14  concern Breeland's actions while he was employed at the USPS, and Defendant's attorneys needed

15  to engage in candid communications with him in order to give sound and informed legal advice.

16  Defendant also argues that these communications are protected by the work product doctrine because

17  the communications contain questions from USPS attorneys and Breeland's responses, the

18  production of both of which "would potentially reveal intended lines of proof, the attorneys' through

19  processes; opinions about the relative importance of facts; and highlights of Breeland's factual

20  knowledge." (Def.'s Opp. at 21.)

21       The Court denies Plaintiff's motion to compel the production of the September 12, 2012

22  email communications and the June 22, 2012 letter.  At a minimum, these documents are protected

23  by the work product doctrine, whether or not the attorney-client privilege applies.  See Gen-Probe

24  Inc. v. Becton, Dickinson & Co., Case No. 10-0602, 2012 U.S. Dist. LEXIS 49028, at *17-*18 (S.D.

25

26       [2] Plaintiff also cites several cases not relevant to the issue at hand.  In Export-Import Bank v.
    Asia Pulp & Paper Co., 232 F.R.D. 103, 113 (S.D.N.Y. 2005), for instance, the court addressed whether
27  an individual was the "functional equivalent" of an employee.  Defendant does not, however, assert that
    Breeland was the functional equivalent of an employee after his retirement.  Similarly, the principle that
28  the attorney-client privilege protects communications, not facts, is not implicated because Plaintiff is
    not just seeking facts, he is seeking withheld communications.

1   Cal. Apr. 6, 2012) (communications between counsel and former employee that occurred years after

2   the employment relationship ended were protected by the attorney-client privilege); cf. Hynix

3   Semiconductor Inc. v. Rambus, Inc., Case No. 00-20905 RMW, at *25 (N.D. Cal. Feb. 10, 2008)

4   (doubting whether former employees that were paid consultants at the time of trial preparation could

5   be considered "clients" for attorney-client privilege purposes in context of determining appropriate

6   scope of cross examination about trial preparation).   The June 2012 and September 2012

7   communications included questions from counsel to Breeland regarding his knowledge of Plaintiff's

8   allegations, which implicate counsel's mental impressions and opinions.

9            3.     *Communications between USPS Attorneys and Armstrong-Santos after*
                    *Retirement*

10

11           Plaintiff seeks production of December 13, 2012 email communications between Attorney

12   Jennifer Wang and Patricia Santos-Armstrong.   Defendant's privilege log states that the email

13   communications were prepared regarding litigation and contain the subject "Domingo v. USPS."

14   (Wang Decl. Ex. R.)   Because Defendant has agreed to produce the withheld emails, the Court need

15   not address this issue further.

16           4.     *Communications between USPS Attorneys and Breeland and Saba while*
                    *Employed with USPS*

17           Plaintiff seeks "various" documents involving Pete Breeland and Aftim Saba.   (Pl.'s Mot. at

18   22.)   Plaintiff argues that these individuals are no different than third-party fact witnesses and

19   Defendant has not established that an attorney participated in the communications, and in any event

20   these individuals were not clients of USPS attorneys.

21           The Court denies Plaintiff's motion to compel with respect to communications between

22   USPS attorneys and Breeland and Saba.   First, the privilege log indicates that the communications

23   involved USPS attorneys.   (Wang Decl. Ex. R at 3.)   Second, as to communications from Breeland

24   created during his period of employment, the privilege log indicates that the communications involve

25   privileged subject matter.   Further, Attorney Marsh avers that he communicated with Saba, a USPS

26   contract employee or functional equivalent of an employee, for the purpose of searching for

27   responsive documents.   Communications between USPS counsel and a USPS employee regarding

28   responding to discovery requests are privileged.

United States District Court
For the Northern District of California

1

      5.    *Breeland's Draft Declaration*

2          Finally, Plaintiff moves to compel the production of a draft of a declaration that Breeland

3  submitted during Plaintiff's EEO case. This document was created January 10, 2009, while

4  Breeland was still an employee of the USPS. Plaintiff argues that the draft is not protected simply

5  because Breeland may have received assistance in drafting the declaration from Larry Estrada, a

6  USPS attorney. He cites United States v. Naegele, 468 F. Supp. 2d 165, 171 (D.D.C. 2007), for the

7  proposition that drafts of documents intended to be disclosed are not protected by the attorney-client

8  privilege because they are not confidential. However, Naegele is distinguishable because it involved

9  draft bankruptcy forms, and the court held that the "bankruptcy filing was not itself 'litigation' in

10  anticipation of which protected attorney work product can be created." 468 F. Supp. 2d at 173.

11  Defendant also argues that the draft declaration constitutes both legal advice and a request for

12  information from Estrada to a client. Defendant further contends that the draft declaration is

13  protected work product.

14          The Court denies Plaintiff's motion to compel with respect to Breeland's draft declaration.

15  Breeland's draft declaration was created by Defendant's employee and Defendant's counsel during a

16  formal EEO administrative proceeding that was the prelude to this litigation. Accordingly, it was

17  prepared in anticipation of litigation and is protected work product. Also, like draft answers to

18  interrogatories, which are "classic examples of opinion work product," a draft declaration is likely to

19  contain an attorney's mental impressions and legal strategies. Ideal Elec. Co. v. Flowserve Corp.,

20  230 F.R.D. 603, 609 (D. Nev. 2005). As Defendant points out, Plaintiff himself has withheld

21  documents created during EEO proceedings on the basis of work product protection. (Wang Decl.

22  Ex. S, Pl.'s Priv. Log., Dkt. 119.)

23  **III.    Conclusion**

24          The Court grants in part and denies in part Plaintiff's motion to compel, grants Plaintiff's

25  motion to shorten time, and denies Plaintiff's motion to strike.

26  **IT IS SO ORDERED.**
      Dated:

27       August 7, 2013                     ELIZABETH D. LAPORTE
                                         United States Magistrate Judge

28