IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NESTOR C. DOMINGO,<br><br>  Plaintiff,<br><br>v.<br><br>PATRICK R. DONOHUE, Postmaster General of the United States,<br><br>  Defendant. | No. C 11-05333 CRB<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Pro se Plaintiff Nestor C. Domingo ("Plaintiff"), a former employee of the United States Postal Service ("USPS"), filed this suit alleging employment discrimination based on his race, national origin, physical disability, and in retaliation for protected actions taken against the USPS. Postmaster General Patrick Donahoe ("Defendant") moves for summary judgment. Having considered the parties' arguments and the entire record of this case, the Court GRANTS Defendant's Motion for Summary Judgment.

## I.    BACKGROUND

Plaintiff's problems with the USPS date back to December 2003, when he pursued a claim with the EEOC against his new supervisor in the Napa, California post office. Compl. (dkt. 1) ¶ 10. Plaintiff and the USPS settled the dispute a few months later. Id. Plaintiff now contends that the USPS breached the settlement because his "working condition[s] dramatically changed for the worst" after March 2004. Id. ¶ 11.

Plaintiff states that the worst of this treatment began in early 2006. The year before, Plaintiff was injured in a vehicle accident that fractured some of his ribs and required removal of his kidney and spleen. See id. ¶ 13. Plaintiff's allegations of discrimination arise from a number of incidents following his return to full duty in the spring of 2006. Plaintiff claims that (1) he was followed and harassed on his route by Pete Breeland, another USPS employee; (2) Breeland threatened to have Plaintiff fired without authority to do so; (3) Plaintiff was denied compensation increases that were made available to allegedly similarly-situated employees; (4) Plaintiff's supervisor, Jeff Tillotson, instructed Breeland to follow Plaintiff and find safety violations which could be used to terminate Plaintiff; (5) Tillotson directed other employees to inspect Plaintiff's personal vehicle; (6) Tillotson visited Plaintiff's customers and suggested that he was being investigated for his citizenship status; and (7) Breeland downloaded information and a photograph of Plaintiff's son, and told employees that he was "retarded" in order to suggest that Plaintiff was also mentally disabled. Plaintiff's Objections and Responses to Mot. ("Opp'n") at 3-4 (dkt. 143).

Plaintiff further alleges that he experienced consistent harassment from his superiors and other postal service employees while his claims were being investigated. Id. at 6. Due to this harassment, Plaintiff became depressed and uncommunicative at work. Id. at 7. On April 19, 2007, Napa Postmaster Patricia Armstrong requested a psychological evaluation of Plaintiff, noting that other employees said that they felt threatened by his recent actions. On May 4, 2007, Dr. Aftim Saba, a doctor employed by the USPS, found Plaintiff "not fit for duty" and referred him to Dr. Steven Raffle for a second opinion. Id., Exh. 13 at 3. After assessing Plaintiff on August 9, 2007, Dr. Raffle determined that he was "not fit to perform his duties" due to psychotic disorder and emotional instability.[1] Id., Exh. 14 at 23.

---

[1] Plaintiff points out that his own doctors came to different determinations regarding his mental state. On July 28, 2007, Dr. Robert Kaplan concluded that Plaintiff was "psychologically fit to resume his full duties as a regular rural carrier." Id., Exh. 8-A at 1. Dr. Mary Spence met with Plaintiff four times between May 2007 and August 2009 and wrote that she never detected "any evidence or suggestion that Mr. Domingo ha[d] a psychotic disorder or any psychotic symptoms." Id., Exh. 8-B at 1.

2

Based on Dr. Saba's medical report, Tillotson issued Plaintiff a Notice of Separation from the USPS on June 1, 2007, which stated that he had temporarily been found not fit for duty. Id., Exh. 4 at 1. When Dr. Raffle confirmed Dr. Saba's diagnosis, Tillotson sent Plaintiff a Notice of Proposed Separation from the USPS on September 18, 2008. Id., Exh. 4 at 3-4.

Plaintiff filed five formal EEO complaints from February 2006 through October 2008. Patterson Decl. (dkt. 9) ¶¶ 4-8. The EEOC rejected Plaintiff's claims and refused his request to reconsider in August 2011. Id. ¶ 5. Plaintiff then filed the present lawsuit, alleging causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq. See Compl. at 2. The Court granted Defendant's motion to dismiss all claims that Plaintiff had failed to exhaust administratively. See generally Order Granting Mot. to Dismiss ("Order") (dkt. 31). Pursuant to that Order, the only claims remaining are Plaintiff's alleged discrimination based on race, nationality, and physical handicap, in addition to Plaintiff's retaliation claim, which Plaintiff exhausted through EEO Case No. 4F-945-0103-06. Id.

Now before the Court is Defendant's motion for summary judgment on those remaining claims. See Mot. for Summ. J. ("Mot.") (dkt. 131). In addition to opposing Defendant's motion, Plaintiff objects to Defendant's reply on the grounds that it includes new evidence and thereby prejudices Plaintiff. See Plaintiff's Objection to Defendant's Untimely Submission of Exhibits ("Objection") (dkt. 142).

**II.   LEGAL STANDARD**

   **A.   Summary Judgment**

The Court can grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict" for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

3

A fact is material if it could affect the outcome of the suit under the governing law. Id. at 248-49 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)). To determine whether a genuine dispute as to any material fact exists, the court must view the evidence in the light most favorable to the non-moving party. Id. at 255.

In determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal citation omitted). Rather, a court is entitled to rely on the nonmoving party to "identify with reasonable particularity the evidence that precludes summary judgment." See id. When a plaintiff appears pro se, as here, his complaint must "be liberally construed" and be "held to less stringent standards than formal pleadings drafted by lawyers." Florer v. Congregation Pidyon Shevuyim, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

### B.     Employment Discrimination

A plaintiff can defeat a motion for summary judgment on an employment discrimination claim by producing "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer." Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1105 (9th Cir. 2008) (quoting Metoyer v. Chassman, 504 F.3d 919, 931 (9th Cir. 2007)). Once the plaintiff establishes a prima facie case of discrimination, "the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory or retaliatory conduct." Id. at 1106. If the defendant articulates such a nondiscriminatory reason for the conduct, then the burden shifts back to the plaintiff to show that "the employer's proffered nondiscriminatory reason is merely a pretext for discrimination." Id. (quoting Dominguez-Curry v. Nevada Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005)).

For claims of status-based discrimination (race, color, national origin, sex, religion), the plaintiff need only show that "the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2523 (2013). For claims of retaliation, on the other hand, the

plaintiff must meet a higher standard: "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." Id. at 2528.

## III. DISCUSSION

### A. Plaintiff Has Not Produced Evidence Of Disparate Impact Based On Race Or Nationality

Plaintiff contends that he was subject to disparate impact and discrimination based on his race and nationality because he believes that (1) he was the only rural carrier targeted for inspections; (2) other similarly-situated employees were provided extra pay and benefits; and (3) his personal vehicle was inspected by other employees under the direction of Tillotson. Plaintiff further alleges that USPS management ignored his claims but believed the statements of Plaintiff's harassers, who were predominantly white. In his initial EEO Investigative Affidavit, Plaintiff stated that the harassment that he allegedly experienced was motivated at least in part by race. Wang Decl., Exh. A-3 (dkt. 135-2) ¶ 20 ("Pete Breeland is Caucasian. Jeff Tillotson is also Caucasian. No Caucasian rural Carrier in the Napa Post Office was subjected to a route inspection during the period my route was inspected").

Plaintiff also claims that he was discriminated against based on his nationality, based in part on the fact that Tillotson allegedly discussed Plaintiff's immigration status with one of Plaintiff's customers and suggested that Plaintiff may be undocumented. See id. ¶ 32

Defendant denies Plaintiff's allegations of discrimination and disparate impact. First, according to Napa Postmaster Santos-Armstrong, she instructed Breeland to act as a temporary supervisor, and that he inspected the routes of all rural mail carriers. Armstrong Decl. ¶¶ 6-7. Second, Defendant responds that Wilfredo De La Cruz received additional pay due to the number of dismounts his route required, rather than for agreeing not to support Plaintiff's complaint against Defendant. Third, Defendant avers that employees did not inspect Plaintiff's personal vehicle, and provided declarations by the employees alleged to have performed the inspections, who stated that they did not occur. Finally, Defendant argues that Plaintiff was terminated not based on these incidents, but because two doctors reported that he was not fit for duty.

5

1    Once Defendant produced evidence that he had a nondiscriminatory reason to
2 terminate Plaintiff, the burden shifted to Plaintiff to produce evidence raising a genuine
3 dispute as to a material fact that Defendant's stated reason for the terminate was merely
4 pretext for discrimination. Surrell, 518 F.3d at 1106. Plaintiff has not met this burden.

5    Plaintiff did not produce any evidence besides his own testimony upon which a jury
6 could rely to determine that Defendant's proffered reason for his termination—the medical
7 opinion of two doctors that he was not fit for duty—was pretext for discrimination. The
8 Ninth Circuit "has refused to find a 'genuine issue' where the only evidence presented is
9 'uncorroborated and self-serving' testimony." Villiarimo v. Aloha Island Air, Inc., 281 F.3d
10 1054, 1061 (9th Cir. 2002) (quoting Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir.
11 1996)); see McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1340 (9th Cir. 1987) (finding that
12 the plaintiff's testimony alone did not constitute evidence "that the reason for discharge was
13 racially motivated in breach of California public policy"). Even if, as Plaintiff alleges, the
14 USPS monitored his route but not those of Caucasian rural carriers, this does not create a
15 genuine dispute of material fact unless supported by evidence that the decision was
16 motivated at least in part by discriminatory reasons. Without such evidence, Plaintiff has not
17 met his burden.

### B. Plaintiff Has Not Produced Evidence That His Termination Was Pretext For Discrimination Based On Physical Disability

Plaintiff states that he was discriminated against because he was regarded as having a physical disability following his January 2005 car accident, which fractured multiple ribs and required removal of his kidney and spleen. See Opp'n at 9-10. In his view, he was reinstated to full duty in January 2006 not because his employers believed him to be physically healed, but rather because a prior agreement stated that he must be reinstated within one year of the accident. Id. Defendant is entitled to summary judgment on this claim because Plaintiff does not provide sufficient evidence to show he was regarded as disabled or suffered discrimination as a result.

 "To state a prima facie case under the Rehabilitation Act, a plaintiff must demonstrate that (1) she is a person with a disability, (2) who is otherwise qualified for employment, and

6

(3) suffered discrimination because of her disability." Walton v. U.S. Marshals Serv., 492 F.3d 998, 1005 (9th Cir. 2007). The Rehabilitation Act incorporates the Americans with Disabilities Act's standards of substantive liability. Id. The ADA describes "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (B) a record of such impairment, or (c) being regarded as having such an impairment." Id. (emphasis added). Plaintiff does not allege that he has an actual disability, but rather that he was "regarded as" having a disability. An individual is "regarded as" disabled if he (1) has an impairment "that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation," (2) has an impairment that limits major life activities "only as a result of the attitudes of others toward such impairment," or (3) does not have an impairment "but is treated by a covered entity as having a substantially limiting impairment." Id. (citing 29 C.F.R. § 1630.2(l)).

  Plaintiff argues that he falls within this third category, because his employer treated him as being disabled or substantially limited even though he was no longer impaired from his injury. In support, Plaintiff points out that (1) he was pressured to give up his route after returning to full duty, and (2) in response to his EEO complaint, Defendant highlighted his medical records as proof of inability to perform his job. See Opp'n at 10. Though this may constitute evidence that Defendant knew that Plaintiff sustained injuries from a car accident, it is not evidence that Defendant believed Plaintiff to be substantially limited by these injuries such that they impaired his job performance more than a year after the date of the incident, at which point Plaintiff had been returned to full duty. See, e.g., Thompson v. Holy Family Hosp., 121 F.3d 537, 541 (9th Cir. 1997) ("Even if Holy Family believed that Thompson was incapable of lifting 25 pounds, it does not follow that the hospital regarded her as disabled" because a 25 pound restriction is not a "substantial limitation."); Madjlessi v. Macy's W., Inc., 993 F. Supp. 736, 742 (N.D. Cal. 1997) (finding "whether the employer continued to employ the employee after the onset of her impairment" relevant to the analysis of whether the employee was regarded as substantially limited).

In the absence of evidence that Plaintiff was terminated for other improper reasons, Plaintiff has offered no evidence that would give rise to a genuine dispute as to material facts that could affect the outcome of a trial.

### C. Plaintiff Has Not Produced Evidence of Retaliation

Plaintiff argues that he was retaliated against for filing EEOC complaints against the USPS. As evidence of this, Plaintiff states that after he settled a prior complaint against USPS in 2004, he (1) was consistently harassed by his superiors and other USPS employees because his route was inspected, (2) did not receive the same pay increases as other employees, and (3) his personal vehicle was inspected by co-workers. According to Plaintiff, this harassment grew worse in early 2006, and he wrote a formal complaint against his supervisors in March of that year. Plaintiff claims that his employers then sought to terminate his employment in retaliation for his harassment complaints. In Plaintiff's view, he was referred for a psychiatric evaluation in May 2007 to support the management's case against him, and this evaluation was pretext for Tillotson's suggestion that Plaintiff be separated from the USPS in 2008.

To prevent summary judgment on a retaliation claim, a plaintiff must provide evidence that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision." Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003); Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003). Once this prima facie case is made, the burden shifts to the defendant to "articulate a legitimate, non-discriminatory reason for the adverse employment action." Manatt v. Bank of Am., 339 F.3d 792, 800 (9th Cir. 2003). Here, once Defendant stated a non-discriminatory reason for Plaintiff's separation from the USPS—the medical opinion of two doctors that he was unfit for duty—the burden shifted back to Plaintiff to produce evidence "that the reason was merely a pretext for a discriminatory motive." Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).

The Supreme Court has held that plaintiffs can prove that an adverse employment action was a pretext for discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't. of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). To prevent summary judgment, Plaintiff must present "specific" and "substantial" evidence of pretext. Manatt, 339 F.3d at 801 (upholding summary judgment where plaintiff failed to introduce "specific and substantial circumstantial evidence of pretext" to negate employer's claim that plaintiff was dismissed due to general staff reduction); Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 270 (9th Cir. 1996) (upholding summary judgment where plaintiff failed to produce "specific, substantial evidence of pretext" to negate employer's claim that plaintiff was dismissed due to poor performance and bad attitude). In order for plaintiff to survive summary judgment, this specific and substantial evidence must show that retaliation was the "but for" cause of his termination. Nassar, 133 S. Ct. at 2523.

Plaintiff has not produced significant and substantial evidence to indicate that Defendant's stated reason for urging Plaintiff's separation from the USPS—mental evaluations indicating that he is unfit for duty—was merely pretext for retaliation.[2] Plaintiff did not undergo psychological evaluation until nearly a year and a half after the incidents at issue in this case, and Tillotson did not suggest that he be separated from the USPS until more than two years after the incidents.[3] In fact, the Napa Postmaster was first alerted that

---

[2] Plaintiff relies on letters by Drs. Kaplan and Spence to indicate that there may be a question of fact regarding whether Plaintiff was mentally unfit to perform his job. The doctors stated that they treated him on multiple occasions and determined that he did not have a mental impairment that would preclude his job performance. But the question before the Court is not whether Plaintiff did, in fact, have a mental impairment; the Court previously dismissed Plaintiff's claim regarding discrimination based on mental impairment. See Order at 4. Rather, the question relevant to Plaintiff's retaliation claim is whether Defendant reasonably relied upon two medical evaluations to determine that Plaintiff was not fit for duty. Plaintiff has not produced evidence to indicate that the Court should answer this question in the negative.

[3] Retaliatory purpose for a plaintiff's termination "can be inferred from timing alone." Valliarimo, 281 F.3d at 1065. But timing is only sufficient to indicate retaliation when the termination occurred "fairly soon after the employee's protected expression." Id. at 1065 (internal citation omitted) (holding that timing is not sufficient to indicate causation when the plaintiff's employment was terminated eighteen months after the protected activity).

9

Plaintiff may need a psychiatric evaluation in April 2007, after other rural carriers stated that they felt uncomfortable with and threatened by Plaintiff. Plaintiff has not demonstrated that this legitimate, nondiscriminatory reason was pretext for retaliation.

### D. Plaintiff Has Not Established Hostile Work Environment And Disparate Impact

Plaintiff contends that the events that occurred between March 9 and March 31, 2006 are evidence of hostile work and environment. Defendant addressed each of these events in its Motion, stating for each that the event either did not occur, that Defendant had a valid or nondiscriminatory reason for the incident, or that the events did not constitute harassment or hostile work environment.

"A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000). In order for a plaintiff to establish that he experienced a hostile work environment, the plaintiff must show that the workplace "permeated with 'discriminatory intimidation, ridicule, and insult.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). To determine whether plaintiff has established hostile work environment, the court considers the totality of circumstances, including frequency and severity of the discriminatory conduct, whether it is physically threatening, and whether it interferes with the employees' job performance. Id. Plaintiff must show that the conduct was "both subjectively and objectively hostile," and evidence of hostility "must be considered from the perspective of a reasonable person belonging to the racial or ethnic group of the plaintiff." Galdamez v. Potter, 415 F.3d 1015, 1023 (9th Cir. 2005) (internal quotation marks omitted).

Courts have set a high bar for plaintiffs to establish that harassment was pervasive and negatively impacted job performance. See, e.g., Manatt, 339 F.3d at 798 (no hostile work environment existed when plaintiff overheard supervisors calling him a "China man," making fun of his pronunciation, and mocking the appearance of Asians); Vasquez v. Cnty. of L.A., 349 F.3d 634, 643 (9th Cir. 2003) (no hostile work environment existed when

10

plaintiff's employer referred to his "typical Hispanic macho attitude" and said that he would work better in the field because "Hispanics do good in the field" because the statements were not persistent); see also Ray, 217 F.3d at 1245 ("Not every insult or harassing comment will constitute a hostile work environment").

All of the incidents Plaintiff cites occurred within a one-month time frame, and following the incidents, Plaintiff continued to work for the USPS for more than a year before he was dismissed on other grounds. Thus, Plaintiff has not met his burden to show that the allegedly harassing incidents were pervasive, or that they interfered with his job performance. The Court addresses each incident in turn.

### 1. Breeland's Route Inspection

Plaintiff contends that the hostile work environment began on March 9, 2006, when Breeland inspected his route. Napa postmaster Santos-Armstrong states in a declaration that she "instructed Tillotson to use Breeland to assist in the 2006 National Mail Count, and detailed Breeland to a temporary acting supervisor position . . . for that purpose." Mot. at 5. Additionally, Santos-Armstrong states that she instructed Breeland to conduct route inspections of all eight rural routes at the Napa Post Office, and Defendant provided route inspection reports corroborating that Breeland inspected all eight routes. Id.; Armstrong Decl. ¶¶ 6-7. Accordingly, this incident does not support Plaintiff's hostile work environment claim.

### 2. Extra Dismounts

Next, Plaintiff contends that he was denied extra dismounts that a similarly-situated co-worker received. Acknowledging that De La Cruz received a greater number of extra dismounts than Plaintiff, Defendant notes that De La Cruz's route was the only one that included a large residential subdivision, which became a more complicated route on garbage collection days. Defendant states that "on garbage collection day in the subdivision, trash cans were regularly placed in front of the mailboxes, requiring De La Cruz to dismount from his vehicle in order to access the mailboxes." Mot. at 8. Since the USPS granted De La Cruz

these extra dismounts based on the complicated nature of his route, this cannot support Plaintiff's hostile work environment claim.

### 3. Inspection Of Plaintiff's Vehicle

Plaintiff contends that two other USPS employees, also of Filipino descent, were ordered by Tillotson to inspect Plaintiff's vehicle on three separate occasions. Plaintiff contends that he witnessed the employees inspecting his personal vehicle for approximately fifteen minutes on each occasion, but did not confront them because he did not want to make the hostile work environment worse.

Defendant produced declarations of the individuals alleged to have inspected Plaintiff's personal vehicle; both denied that the events occurred. Defendant also states that Tillotson and Breeland cannot be held responsible for these acts because the statements by co-workers that the inspections were "boss's orders" are inadmissible hearsay. See Fed. R. Evid. 801. Finally, Defendant emphasizes that Plaintiff "relies entirely on his own uncorroborated, self-serving testimony" as evidence that these inspections occurred, and that they were ordered by Tillotson. Reply at 12. Without corroboration, Plaintiff's claim that other employees inspected his personal vehicle cannot constitute evidence of hostile work environment.

### 4. Citizenship Status

Plaintiff contends that Tillotson questioned Plaintiff's citizenship status with one of his customers and that this incident contributed to the hostile work environment because it caused him humiliation and pain upon interacting with this customer, and that the customer stated that his purported citizenship status would negatively impact their business relationship.

Defendant denies that the USPS investigated Plaintiff's citizenship status in 2006. Additionally, Defendant argues that even if this customer questioned Plaintiff's citizenship status, it did not affect his work or relationship with the customer, given that he continued to deliver to the customer until the end of his USPS employment more than a year later. The

occurrence of this event has not been corroborated, and it does not constitute evidence of hostile work environment.

### 5. Comments About Plaintiff's Family

Plaintiff further alleges that on March 31, 2006, Breeland harassed Plaintiff by mocking his family to co-workers by calling his son "retarded" and noting that his wife made more money than him. Plaintiff states that these remarks caused him humiliation in the workplace, and that it may have contributed to Breeland and Tillotson's decision to require that Plaintiff undergo psychiatric evaluation. The Court agrees with Defendant that even if these statements are not inadmissible hearsay, Plaintiff fails to show how they are objectively offensive or negatively impacted his work.

In sum, Plaintiff has failed to produce evidence that these five allegedly harassing events were persistent, or that they impacted Plaintiff's job performance, or that they rose to the level that courts have held constitute a hostile work environment.

### E. Plaintiff's Objection To Defendant's Evidence

Plaintiff objects to Defendant's submission of exhibits along with his Reply on the grounds that he would be prejudiced by the submission of additional evidence unless he had a reasonable opportunity to respond. Specifically, Defendant attached six documents to its Reply, accompanied by a declaration by attorney Jennifer Wang: (1) excerpts from the EEO Investigation Report, (2) the Final Agency Decision, (3) the EEOC Office of Federal Operations ("OFO") decision, and (4) Pre-Complaint Counseling form for EEO Case no. 4F-945-0103-06, (5) the EEOC OFO decision for Case No. 4F-945-0179-07, (6) the EEOC OFO decision in Case No. 4F-945-0007-06. See generally Wang Decl. (dkt. 138), Exhs. 1-6.

Under Civil Local Rules for the Northern District of California, "[i]f new evidence has been submitted in the reply, the opposing party may file and serve an Objection to Reply Evidence, . . . stating its objections to the new evidence." N.D. Cal. Civ. L.R. 7-3(d)(1). Plaintiff objects on the grounds that the "purpose of [Federal Rule of Civil Procedure] Rule 56(c) is to afford the nonmoving party notice and a reasonable opportunity to respond to the moving party's summary judgment motion and supporting evidence." Objection at 1-2.

The exhibits to which Domingo objects were all previously available to Plaintiff. See Moua v. Int'l Bus. Machs. Corp., No. 10-1070, 2013 WL 685220, at *4 (N.D. Cal. Feb. 25, 2013) (overruling the objection because the proffered evidence—a collection of pleadings already available to the plaintiff and submitted in response to plaintiff's opposition—did not "contain anything that can be considered 'new'"). Because Defendant's Opposition only included agency decisions and legal opinions to which Plaintiff previously had access, the Court OVERRULES Plaintiff's objection.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion for summary judgment in its entirety.

**IT IS SO ORDERED.**

Dated: October 15, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE